UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARRELL LADOW; MULENNIUM EQUIPMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA and its agency, THE DEPARTMENT OF ENERGY, and THE BONNEVILLE POWER ADMINISTRATION, <br><br> Defendants. | NO. CV-09-5020-RHW <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiffs' Motion for Summary Judgment (Ct. Rec. 11); Defendants' Cross-Motion for Summary Judgment (Ct. Rec. 22); Defendants' Motion to Continue Trial and Reopen Discovery (Ct. Rec. 28); and Plaintiffs' Motion to Strike Opinions of Experts (Ct. Rec. 31). A hearing on the motion was held on April 14, 2010, in Richland, Washington. Plaintiffs were represented by John Schultz. Defendants were represented by Frank Wilson.

This case involves a relatively small claim under the Federal Torts Claim Act. Plaintiff Darrell Ladow was involved in an accident in which it is undisputed that a vehicle driven by Joseph Yegge crossed into the opposing lane of traffic and struck the vehicle driven by Ladow. Mr. Ladow was driving a semi-truck owned by Plaintiff Mulennium Equipment. Mr. Yegge was an employee of Bonneville

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT ~ 1**

Power Administration.

Plaintiffs are seeking specific damages of $11,686.30 in medical expenses, and $28,590.38 in damages and down time to the semi-truck. Plaintiffs filed their complaint on March 16, 2009. A scheduling conference was held on September 8, 2009, and a Scheduling Order was entered on September 21, 2009. The Scheduling Order set forth the deadline for identifying expert witnesses for January 7, 2010. The discovery cutoff was set for March 23, 2010 and the dispositive motion deadline was set for March 30, 2010.

On October 21, 2009, in its Answer to the First Interrogatories Proposed to Defendants and specifically to Interrogatory No. 4, Defendants responded that "[t]he United States has no knowledge of the manner in which the accident occurred other than the information contained in the WSP report" and in response to Interrogatory No. 5, "[t]o the best of the United States' information and belief, all statements of individuals that have any personal knowledge of the accident are part of the WSP report."

Defendants responded to Interrogatory No. 6, in the following manner:

> The WSP report, and the documents submitted to BPA by plaintiffs Darrell Ladow and Mulennium Equipment, Inc. are responsive to this request, and have already been produced. In addition, the United States has produced all documents from the Bonneville Power Administration, other than those covered by the Privacy Act or attorney-client privilege or work product, that have to do with the accident or with Mr. Yegge. Otherwise, BPA does not have any documents or records that reflect the allegations in the complaint or the accident itself, other than the photographs taken by BPA employees of the accident scene. To the best of the United States' information and belief, the BPA photographs of the accident scene were taken by James Cramer, Regional Safety Manager for Walla Walla and Idaho Falls, and Tome Race, Safety and Occupational Health Manager on January 29, 2008. Mr. Cramer took photos of Mr. Yegge's truck and utility box on January 30, 2008, at Anderson's wrecking yard (where the truck was towed), and photos of a similar truck and utility box at the BPA Pasco office. All these photographs have been provided to plaintiffs in discovery.

Based on these responses, Plaintiffs filed a Motion for Summary Judgment, arguing that there were no triable issues of fact regarding whether Mr. Yegge was

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT ~ 2**

negligent. Defendants filed a cross-motion and opposition to Plaintiffs' motion. In the motion, Defendants argued that uncontroverted medical evidence showed that Mr. Yegge died as a result of coronary cessation secondary to cardiac dysrhythmia. Put in layman's terms, Defendants maintain that Mr. Yegge died of natural causes, namely, a heart attack before the accident occurred.

Nothing about this contention is contained in the WSP report. To support this theory, Defendants seek to introduce two expert reports that were not identified in the WSP report and to reopen discovery to permit further investigation into the medical history of the deceased driver.

Based on the answers to the interrogatories given by Defendants, the natural conclusion was that there are no material questions of fact regarding whether Mr. Yegge was negligent. He was. His vehicle crossed over the centerline and violated traffic laws. He caused the accident. It was only when Defendants filed their response to the Motion for Summary Judgment that the issue of when Mr. Yegge died came to the surface.[1] To be fair, Plaintiff is not disputing that they received the coroner's report in discovery. Indeed, in his Statement of Facts

---

[1] In order for Plaintiffs to recover from the United States, they have to show that Mr. Yegge, an employee of Bonneville Power Administration, was negligent. *See* 28 U.S.C. 1346(b), 2674. The Federal Tort Claims Act (FTCA) allows recovery against the United States for injuries caused by the negligent acts or omissions of federal employees who are acting in the scope of the employment. Negligence is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

Under Washington law, the operator of a motor vehicle who suffers an unforeseen loss of consciousness while driving, and is therefore unable to control the vehicle, is not liable for negligence. *Kaiser v. Suburban Transp. System*, 65 Wash.2d, 461, 466 (1965).

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT ~ 3**

Plaintiffs refer to the coroner's report that determine that Mr. Yegge was suffering from a heart attack. Nevertheless, Defendants never referred to the coroner's report in its answers to the Interrogatories. Instead, Defendants relied on the WSP report, and there is no mention in the report that Mr. Yegge suffered a heart attack prior to the accident.

## ANALYSIS

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 325; *Anderson*, 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** ~ 4

Here, the question the Court must answer is whether it will consider Defendants' evidence, namely the coroner's report, in determining whether there are questions of material fact for the jury to resolve. If the Court does consider the coroner's report, it would conclude that there are triable issues of fact regarding when Mr. Yegge died. If it concludes that it should not consider the report, the jury would only hear evidence that Mr. Yegge crossed the centerline and caused the accident. There would be no credible evidence in the record to suggest that Mr. Yegge was unconscious prior to the accident. While a witness testified that he saw Mr. Yegge was bent over the wheel and not looking straight at the on-coming traffic, this testimony would not establish that Mr. Yegge was unconscious. It was just as likely that Mr. Yegge was reaching for his cell phone or some other item that had dropped. Without the coroner's report, any conclusion by the jury that Mr. Yegge became unconscious prior to the accident would be purely speculative.

The federal rules are to be interpreted and applied to arrive at inexpensive and efficient resolution of disputes. In cases such as this case, where the amount in controversy is less than the jurisdictional amount for diversity cases, the amount of time and discovery that can be expended in pursuing the claim is limited by economics. Accordingly, it was logical and efficient for Plaintiffs to move for summary judgement based on the record. In response to interrogatories that sought the identification of evidence and experts, the Defendant did not identify the facts and opinions upon which it now relies. To permit the reopening of discovery after the discovery cut off has passed and dispositive motions have been filed does not promote the efficient resolution of claims. In like manner, to permit the testimony of experts that were not mentioned in discovery responses does not promote efficient and inexpensive resolution of cases. To do so would require the Court to reopen discover and for the Plaintiff to hire experts that were not required before the dispositive motions were filed. As such, the Court should not consider the

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT ~ 5**

expert reports, and will not reopen discovery.

The only defense to the motion is the argument that the driver was slumped over the wheel at the time of the accident and therefore must have been incapacitated. As discussed above, such a conclusion is speculative. The slumping could be from any cause, innocent or not. The vehicle violated the rules of the road and caused the accident. As such, Mr. Yegge and his employer are responsible. Plaintiffs' Motion for Partial Summary Judgment is granted, and the remaining issue for trial is the amount of damages that should be awarded to Plaintiffs.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Partial Summary Judgment (Ct. Rec. 11) is **GRANTED**.

2. Defendants' Cross Motion for Summary Judgment (Ct. Rec. 22) is **DENIED**.

3. Plaintiffs' Motion to Strike Opinions of Experts (Ct. Rec. 31) is **GRANTED**.

4. Defendants' Motion to Continue Trial and Reopen Discovery (Ct. Rec. 28) is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and to furnish copies to counsel.

**DATED** this 29th day of April, 2010.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

Q:\CIVIL\2009\Ladow\sj.wpd

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** ~ 6